STEPTOE, JUDGE:
Claimants brought this action for damages sustained to their real and personal property due to the alleged negligent maintenance of the drainage system along W.Va. Route 41, locally known as Webster Road, in Summersville.[1] W.Va. Route 41, at this location, is a road maintained by respondent in Nicholas County. The Court is of the opinion to deny this claim for the reasons more fully set forth below.
In 1964, claimants’ grandmother, Viola Ransberger, purchased two real property lots located on the east side of W.Va. Route 41. A house, with an estimated value of $70,000.00, is situated on one of the lots. The house was used as a twelve room boarding house while the other lot, which is on the northeast side of the house, is graveled and used for parking. This portion of W.Va. Route 41, which traverses in a north-south direction, has two twelve-foot lanes with a four foot berm on each side of the road. At the time Ms. Ransberger purchased the property in question, *281 claimants assert that there were no drainage problems. During the late 1980's and early 1990's, claimants assert that respondent conducted two paving projects on W.Va. Route 41. During these two separate projects, the road was resurfaced and later the sidewalk was rebuilt. During the summer of 1989, employees of the City of Summersville removed a drain from in front of the house and failed to replace it. After the paving projects and the removal of the drain, the property began to experience drainage problems and complaints were made to the City of Summersville; however, no one notified respondent about these problems. City employees investigated the complaints, and thereafter rebuilt the steps and installed grates on the top of two of the steps on the northeast side of the house to alleviate the water drainage problem. The City’s insurance carrier made a settlement offer in the amount of $10,000.00, but claimants refused this offer. Claimants then noticed that the inside basement wall was beginning to deteriorate and the foundation of the house had begun to shift. The house has been vacant since June of 1996. It was condemned by the City of Summersville in October 1999. In addition, claimants sustained an estimated loss in the amount of $15,500.00 for personal property that was damaged while being stored in the basement of the house. Unfortunately, claimants’ homeowners insurance policy did not provide coverage for the damage to the house and the policy was cancelled by the insurance carrier on July 15, 1997.
According to claimants’ professional surveyor Richard Craig Dunlap, the location of the highest point for the storm drain system is the center of the road where the road surface is crowned with a two percent grade. The water in the southbound lane of W.Va. Route 41 flows southerly against the east edge of the curb for the sidewalk, which has a four percent grade. In May 1997, Mr. Dunlap measured this portion of the eastern edge of the sidewalk at the driveway entrance and found it to be only a half-inch higher than the road surface or almost level with the road. Moreover, Mr. Dunlap observed that the northeast side of the residence was three inches out of plumb.
Claimants’ expert in civil engineering, Joseph P. Young, examined Mr. Dunlap’s data as well as conducting an onsite visit. He was of the opinion that water flowing onto claimants’ property is a contributing factor to the problems experienced by claimants. Mr. Young observed that the design and construction of the road as well as sediment that builds up at the northeast comer of the residence, allow water to flow onto claimants’ property, which saturates the soil and causes the foundation to shift. Since Mr. Young was unaware of the sequence of construction of the curb and the road surface, he was unable to determine which of these factors is the proximate cause of the damage to the house.
The position of respondent is that it was not negligent in the maintenance of the drainage system on W.Va. Route 41. Respondent asserts that it conducted only one paving project one mile north of claimants’ property inl993 and it had no complaints regarding drainage problems on claimants’ property until the spring of *282 1995.[2] During this project, respondent’s employees ground up four inches of the pavement on Route 41. Then, the road was repaved with three inches of base and one inch of wearing course material for smoothness. When the project was completed according to specifications, an on-site field inspector made sure that there was no change in elevation and that there was a curb of four inches. In addition, respondent’s employees installed an asphalt speed bump in the driveway portion of the sidewalk in question, in order to prevent water from draining onto claimants’ property. The asphalt speed bump lasted only for a few months before it was eroded by water flow. Moreover, respondent asserted that it is not responsible for the maintenance of sidewalks on W.Va. Route 41. According to the deposition testimony of Supervisor of the Claims Section of the Legal Division Ben L. Savilla, sometime after the paving project in question, there was one patch in the road surface about eighty-two feet north of claimants’ property.
Respondent’s expert in geotechnical engineering Dr. George Alan Hall conducted an on-site inspection of claimants’ property on September 22, 1999. Dr. Hall opined that claimants were experiencing drainage problems because the City of Summersville had negligently designed and constructed the sidewalk at a higher grade than the road surface of W.Va. Route 41 as well as the fact that the inlet drain was removed by City employees, and should have been replaced. According to Dr. Hall, the slope away from the sidewalk is much steeper than the slope of the road, so water naturally flows in that direction. The water flows along the side of the curb at a relatively high velocity. Once the water reaches the driveway, it begins to spread out and the expansion creates an expansion energy loss. When the water reaches the curb at the lower end of the driveway,, a ramp is created onto the sidewalk and gallons of water flow onto claimants’ property. The faster water flow also carries sediment to the end of the driveway. This sediment build-up then turns water onto claimants’ property. Further, the grate constructed by City of Summersville employees directed water into the soil instead of onto the steps. Additionally, Assistant Supervisor Edward Roger Brown and Dr. Hall observed the that the downspouts and gutters are in a state of disrepair, allowing water to flow directly on the ground adjacent to the house. As a result, Dr. Hall indicated that the saturated soil has created a small landslide at the comer of the parking lot, pushing the steps into the house, causing the basement walls to buckle in the middle and actually *283 causing the interior walls to buckle throughout the northeast side of the house. The house is unstable and uninhabitable.
This Court has held that respondent has a duty to provide adequate drainage of surface water, and drainage devices must be maintained in a reasonable state of repair. Haught vs. Dept. of Highways, 13 Ct. Cl. 237 (1980). In claims of this nature, the Court w ill e xamine whether respondent negligently failed to protect a claimant’s property from foreseeable damage. Rogers vs. Div. of Highways, 21 Ct. Cl. 97 (1996).
In the in stant c laim, c laimants h ave f ailed toe stablished t hat r espondent maintained the drainage structures on W.Va. Route 41, in Nic holas C ounty, in a negligent manner. The Court is of the opinion that respondent, once having notice of the situation on W.Va. Route 41, took immediate and reasonable action to prevent excess water from flowing onto their property. The terrain in this area of W.Va. Route 41 forms a natural drainage area on claimants’ property. In addition, the Court concludes from all the testimony and evidence in this claim that there are several factors, other than the actions taken by respondent, which have brought about the drainage problems causing the damages to claimants’ property. Consequently, there is insufficient evidence of negligence on the part of respondent upon which to base an award.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.

 At the hearing, the Court amended the style of the claim to reflect the fact that Steven Randall Brock and Deborah Annette Lineberry are proper party claimants in this claim.

 The date of the paving project was established by respondent through affidavits and daily records admitted on May 5,2000, as post-hearing exhibits in response to rebuttal evidence presented by claimants at the hearing. On September 26, 2000, counsel for claimants took the depositions of several individuals regarding these affidavits and daily records.